Johnson, J.
The arguments of the counsel have been principally directed to the question whether case or trespass was the proper remedy for the injury which the plaintiff is supposed to have sustained. But that question will be superseded by the inquiry whether any action will lie for the supposed injury.
The rule, I take it, is very clear, that no action lies for an injury which has arisen from the plaintiff’s own folly, nor where' the injury results from an act justified by the previous unlawful act of the plaintiff.
Thus, if two men have adjoining lands, one build his house so near the land of the other that his windows look into the lands of the other, yet may his neighbour build a house on his *429 own land and obstruct the lights, unless it bo an ancient house, for cujus est solum, ejus est usque ad cmlum; and it was folly in the first to build his house so near the land of the other. Bury v. Pope, Cro. Eliz. 118. So if one throw grain or money into my heap, and it cannot be distinguished how much belonged to each, I may talio the whole, for it was his folly that rendered my rights uncertain. Com. Dig. tit. Trespass, D. So if a man imprison me of his own wrong, I may justify breaking doors or windows to get out; or if my neighbour, by negligence, suffer his house to be on tire, I may justify pulling it down to save my own which is adjoining. Com. Dig. Trespass, D. A parent or husband may justify a battery in defence of the wife or child. Seward v. Basely, 1 Ld. Ray. 62. So he may justify the battery of one who endeavours wrongfully to dispossess him of bis lands or goods. 1 Haw. P. C. 130.
What is this case ? Horse Creek was the common boundary between the lands of the plaintiff and the defendant. The plaintiff constructed a mill dam across it, partly on his own and partly on defendant’s soil, and the water collected in the dam overflowed a portion of defendant’s land. The right of the defendant to destroy the dam built upon his own soil, and to draw off the water which covered it, is conceded — any one has the right to abate a nuisance erected on his own soil. What more did the defendant do ? He cut the dam on his own side of the creek and nothing more. But it is said that the destruction of a part of that portion of the dam which was erected on the plaintiff’s own soil, and the loss of the timber collected in the pond, and the bridge erected below, which confessedly be. longed to the plaintiff, was an injury for which the defendant is liable.
The plaintiff knew, or will be presumed to have known, for every one will be presumed to know the law, that he had no right to erect a dam or to flow the soil of the defendant. He will for the same reason be presumed to know that the defendant had the right to cut the dam and draw off the water ; and the result shews, what he might reasonably have anticipated, that the consequence would be the destruction of the dam and bridge,' and the loss of the timber collected in the pond ; and his folly is precisely that of the man who built his house so near the land of his neighbour, that a house subsequently erected by the latter obstructed his lights.
Again. The act of the defendant in cutting the dam was necessary and justifiable to draw off the water which had been collected by the unlawful act of the plaintiff on his soil. The injury sustained is like that of him who, attempting to dispossess another of his land, or despoil him of his goods, gets his head broke — It is damnum absque injuria.
*430 I agree that if in the execution of a lawful act one does an unnecessary or wanton injury to another who is the aggressor, it is notwithstanding actionable, as when one who has received a slight assault beats the aggressor unmercifully; or when an injury results from the careless manner in which the act is done j and that upon this principle the defendant here is liable, if the loss sustained by the plaintiff is the result of wil-fulncss or carelessness.
The right of the defendant to draw off the water which overflowed his land, being conceded, the question arises in what way ought he to have exercised it. None of the witnesses speak of any other practical mode, nor has any other been suggested in the argument, than by cutting the dam,and none other has suggested itself to my mind. Flood-gates are some times constructed in dams for the purpose of drawing oif the water ; whether in this or not, does not appear, nor whether they were on the defendant’s side of the creek where he could approach them without committing a trespass on the plaintiff. He resorted then to the only practical mode of freeing himself from a nuisance which the plaintiff had erected — to repel a wrong done to him by the plaintiff — the injury sustained by the plaintiff was the result of turning loose a flood of water which he himself had wrongfully collected on the soil of the defendant, and he must bear the consequences.
It struck me that the defendant ought to have given notice to the plaintiff' that he intended to cut the dam, for the purpose of enabling him to draw off the water with the least possible injury to himself; but I am satisfied upon reflection that there was no obligation to do so. The plaintiff had sufficient notice of the dissentofthe defendant to the erection and continuance of the dam. He had sued him and recovered for that injury, and it was his duty to have removed it of his own accord. No notice that the defendant wished the nuisance removed could have been more certain or better calculated to procure the desired result, and the plaintiff ought to have profited by it.
I am therefore of opinion that the motion for a nonsuit ought .to be granted.
O’Neall and Harper, Js. concurred.